GILMORE MCLEOD, APPELLANT, V. ANDREW MURPHY & SON, INCORPORATED, APPELLEE.

51 N. W. 2d 620

Filed February 8, 1952. No. 33105.

*Mecham, Stoehr, Moore, Mecham & Hills,* for appellant.

*Fred N. Hellner,* for appellee.

Heard before SIMMONS, C. J., MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action for treble damages under the Emer-

gency Price Control Act of 1942. Issues were made and trial was had. At the close of plaintiff's case-in-chief, defendant moved for a directed verdict and an order dismissing the action. The trial court sustained the motion and dismissed the action. Plaintiff appeals. We affirm the judgment of the trial court.

Sometime in November 1944, a car of the plaintiff and a truck belonging to one Dan Thomas collided. The accident occurred near Valentine in Cherry County. Thomas was a contract dealer with defendant. Plaintiff agreed to pay the damages to the truck and told Thomas to take it to defendant at Omaha, have it repaired, and he would pay the bill. On November 23, 1944, defendant agreed to repair the truck, making the agreement with Thomas. Defendant thereafter performed work on the truck, furnished materials, and charged Thomas therefor $428.50 for labor, and $395.40 for parts. Thomas was entitled to a dealer's discount on parts. The discount here was $93.60, so that the net charge to Thomas by defendant was $730.30.

On January 24, 1945, defendant prepared an estimate of damages to this truck. It was directed to Thomas. It shows in considerable detail labor items of $458.15 and parts $720, and a total of $1,178.15.

Plaintiff had a man examine this estimate late in January or early in February 1945. On February 15, 1945, plaintiff and Thomas went to defendant's place of business. Evidently plaintiff examined the estimate for he states it contained items that should not have been there, some of which were taken off, but he does not show what items were taken away. In any event, plaintiff paid defendant $1,150 thereon that day and testified that in making the payment he was "paying for the damage to Thomas' truck." Defendant then paid to or credited Thomas with the sum of $419.70, being the difference between $1,150 and $730.30.

Plaintiff brought this action in January 1946, and in his petition alleged that he brought the action for treble

damages pursuant to the provisions of section 165 (205), Emergency Price Control Act of 1942 (Public Law 421, 77th Congress, 2d Session, p. 34), and as amended by the Stabilization Extension Act of June 30, 1944 (Public Law 383, 78th Congress, 2d Session, p. 640), and maximum price regulations issued pursuant thereto. He alleges that he (plaintiff) contracted with defendant to repair the Thomas truck; that "repair work was performed" for the sum of $1,178.15, in accordance with an estimate made by defendant on January 24, 1945; that the price of repairs set out in the invoice was in excess of the maximum price in the amount of $400; that part of the repairs were not furnished; that he demanded reimbursement for the overcharge; that it was not made; and that he was entitled to and prayed for treble damages or the sum of $1,200.

So far as material here, the answer is a general denial.

The action was not tried until May 1949. The motion for a new trial was overruled in June 1951.

Plaintiff's assignments here go to the proposition that the trial court erred in sustaining defendant's motion and in dismissing the action.

Plaintiff argues at length here that Thomas in taking his (Thomas') truck to the defendant for repairs and in contracting for the repairs acted as agent of the plaintiff. This contention is apparently for the purpose of bringing himself within the provisions of the act as one who bought a commodity. We do not deem it necessary to decide that question for the reason that plaintiff has failed to prove his contention that there was an overcharge under the act.

Plaintiff does not undertake to prove that there was an overcharge on any item or items of parts or labor shown on the estimate which he paid. He introduced no evidence as to applicable maximum prices. Rather he arrives at the overcharge on the basis of contending that the charges made to Thomas were the proper charges under the act and hence he was overcharged in

the amount of the difference between the estimate and the bill.

The initial error in plaintiff's position factually is that he assumes that the parts and labor for which Thomas was charged are the same as the parts and labor in the invoice which he paid, and that the difference of $419.70 between the two totals constitutes an unlawful overcharge.

It is clear from the evidence that Thomas was charged for labor performed and parts used in repairing the truck. There is no showing that all the work so done and the parts so used were in connection with the repair of damages done to the truck in the accident. It also appears that certain items of damage to the truck as a result of the accident were not repaired and were not included in the bill to Thomas. In short, Thomas was charged for parts actually used and to be used on the truck and for labor actually performed.

It appears from the evidence that the estimate which plaintiff had had examined and had himself examined before paying the $1,150 was designed as a basis for determining the amount of damages that Thomas had as a result of the accident. The ninth item listed in the estimate under "Parts" is "Freight charges from Valentine to Omaha," $100. Obviously that was not a repair item that defendant was called upon to furnish or expected to furnish. It appears that it was included in the estimate as part of the damages as compensation to Thomas for bringing the truck to Omaha for repairs. There also was included in the estimate "2 9.00x20 Tires & Tubes," $225, which defendant did not and could not furnish because of rationing restrictions during the war, and which plaintiff admitted Thomas could get elsewhere. Plaintiff testified that there was no damage done to tires, but the fact remains he paid an estimate that included that amount for tires.

There also was included in the estimate under "Parts" an item of $10.25 for repair of a tire and tube. The

evidence shows that this was a charge which defendant incurred with a third party in an effort to have a tire and tube repaired and later offered to reimburse plaintiff if it in turn got reimbursement for that item. It appears also that this $10.25 item was charged to Thomas. There were also included in the estimate under "Parts," one grille $13.50, and two running boards $19, which defendant could not secure and put on the truck at the time the other repairs were made. It appears that these items were charged to Thomas to be installed on the truck at a later date, and that they were among the items on which Thomas was allowed a dealer's discount.

It appears then that there were included in the estimate under "Parts," a total of $335.25 which defendant in no way furnished or was expected to furnish, and a total of $32.50 on items which defendant was to furnish later, or an over-all total of $367.75.

It appears further that there was included in the estimate for "Labor" an item of $45 for "Painting Damaged Parts." That painting was not done and could not be done until the grille and running boards were installed. We do not find a labor item charged to Thomas that is reconcilable with that item and accordingly conclude it is accounted for in the over-all payment of $419.70 to Thomas.

It follows that what plaintiff is trying to do here is to subtract costs actually incurred by Thomas in repairing the truck from the amount paid for damages arising from the collision, and contending that the difference is an illegal overcharge. Obviously an overcharge is not established by that method.

If we accept plaintiff's premise that the charges for parts and labor in the estimate are to be related in gross to the charges for parts and labor made to Thomas, then we would necessarily reach the result that Thomas, and not the plaintiff, was overcharged, or that if Thomas was charged the correct amount, plaintiff was undercharged. The estimate shows $720 for parts. Subtract-

ing from that the "freight" item of $100 and $225 for tires and tubes, the result would be $395 for parts put or to be put on the truck. The Thomas bill shows that he was charged $395.40 for parts before the discount was allowed. The estimate shows $458.15 for labor. Deducting from that the $45 labor item for painting leaves $413.15. The evidence shows that Thomas was charged $428.50 for labor performed. The net estimate in neither instance is as much as the charge to Thomas. Of course, this does not show that Thomas was overcharged or plaintiff undercharged, but rather shows the lack of a reconcilable basis for plaintiff's claim.

Summing up, plaintiff takes the amount which he, in effect, paid to Thomas for damages to his truck, subtracts from that the amount of the actual cost to Thomas of an incomplete repair job, and holds that the difference was an overcharge by defendant. We know of no rule of law or reason that sustains that conclusion.

The rule is: "Where the evidence is insufficient to sustain a verdict in favor of plaintiff, the trial court may give a peremptory instruction in favor of defendant or excuse the jury and enter a nonsuit." Campbell v. Columbia Casualty Co., 125 Neb. 1, 248 N. W. 690. See, also, Rzeszotarski v. American Smelting & Refining Co., 133 Neb. 825, 277 N. W. 334.

The judgment of the district court is affirmed.

AFFIRMED.